UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ERIC ALVARADO,<br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>    Defendant. | Case No. 1:14-cv-1090-JES-JEH |

## ORDER

On April 29, 2015, a Report and Recommendation was filed by Magistrate Judge Jonathan Hawley recommending that the Commissioner's Motion for Summary Affirmance be granted and that Plaintiff's Motion for Summary Judgement be denied. Plaintiff, Eric Alvarado ("Alvarado"), has filed a timely objection to the Report and Recommendation. This Order follows.

**Discussion**

The relevant procedural history is sufficiently set forth in the Report and Recommendation of the Magistrate Judge. Suffice it to say that Alvarado has brought this litigation appealing the Commissioner's denial of his application for disability insurance benefits.

In order to be entitled to SSI and/or DIB, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. See 20 C.F.R. §§ 404. 1520, 416.920.

The five-step is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. Garfield v. Schweiker, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by the substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.C. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 I.S. 988. 107 S.Ct. 580 (1986).

Alvarado raises the following objections: (1) the ALJ erred by reviewing the records prior to the Comparison Point Decision ("CPD") date and finding those conclusions unwarranted; (2) the ALJ failed to review critical evidence supporting his limitations in his mental residual functional capacity ("RFC"); (3) the ALJ erred in relying on the 2004 report of Dr. Hilger and gave improper weight to the findings of Dr. Dalfiume; (4) the Magistrate Judge and ALJ erred in establishing that the Claimant had medical improvement; (5) the ALJ and Magistrate Judge made false credibility assessments; and (6) the hypothetical to the vocational expert ("VE") was improper. Each objection will be addressed in turn.

First, Alvarado argues that the ALJ erred in reviewing the parts of the disability record beginning in 1984 and that the ALJ made false and unwarranted assumptions about the original 1999 decision that put Alvarado on disability. The Plaintiff also argues that the ALJ considered facts surrounding his education and incorrectly deduced that the Plaintiff's activities of daily

living were inconsistent with his disability. For instance, Alvarado contends that during this time period, he attended a school for the disabled, and his living situation was monitored.

The CPD date is the date of reference to the last favorable Social Security determination of disability. *See* §§ 20 C.F.R. 404.1594(b)(7); 416.994(b)(1)(vii); and 416.994(a)(c)(1). The ALJ was instructed to consider pre-CPD and post-CPD evidence, as required by 20 C.F.R. 404.1594(c)(1). The Stipulation to Remand on April 25, 2011 provided:

> On remand, the Administrative Law judge will further evaluate whether the Plaintiff's disability continues. The ALJ will compare the pre-comparison point date (CPD) evidence[1] with the post-CPD evidence, as required by 20 C.F.R. 404.1594(c)(1). In addition, as instructed by 20 C.F.R. 404.1594(d)(4)(iv), the ALJ will not apply any of the exceptions to the medical improvement standard found in 20 C.F.R. 404.1594(d)(1)-(4) unless the conditions for reopening, set forth in 20 C.F.R. 404.988, are met. (AR 682).

The Report and Recommendation properly provides that the ALJ did not err in considering the pre-CPD evidence on record. The ALJ discussed Alvarado's 1990 Scotopic Sensitivity Syndrome and explained why it was not found to be an established medically determinable severe impairment by the state agency medical consultants. The ALJ found that there was no independent diagnosis of Scotopic Sensitivity Syndrome after 1990. In fact, the ALJ considered the 1992 findings of Dr. Caldwell, a medical consultant, which stated that Alvarado's vision was correctable and that there were no restrictions in activities due to his vision.

The Plaintiff also argues that the discussion of the pre-CPD evidence is a violation of the remand instructions because it belies an accusation of fraud, one of the exceptions to the medical improvement standard for discontinuing assistance. However, the ALJ is very clear that the pre-CPD discussion is "provided simply to be thorough in discussing all the evidence in record; and to support the finding that the statements of the claimant, his mother, his brother and Ms. Justus

---

[1] September 24, 1999.

are not reliable . . . " (R. at 645). The ALJ does suggest that the prior disability decision was in error, but emphasizes that Alvarado's case is not being decided based on an exception to medical improvement. Instead, the ALJ emphasized that the original finding of disability was appropriate and that the medical evidence supports a finding that there was medical improvement (R. at 648) and there was improvement in the claimant's residual functional capacity ("RFC") (R. at 669).

Next, Alvarado argues that the ALJ failed to review critical evidence of his limitations in his RFC analysis. Alvarado contends that the ALJ wrongfully afforded the 1999 consultative reports little weight, including the findings of Dr. Cashen, the consulting psychologist. Dr. Cashen had concluded that the plaintiff needs an above average amount of structure and selected entry-level jobs with supervision, but the ALJ failed to discuss these conclusions. The plaintiff further argues that the discounting of Dr. Cashen's opinion disregards medical evidence because it is at odds with the ALJ's unqualified opinion.

All medically determinable impairments are to be considered when the judge conducts a RFC assessment. *See* 20 C.F.R. § 404.1545(a)(2). The ALJ considers medical records along with the other relevant evidence on record. 20 C.F.R. § 404.1527(b). The ALJ is not bound by findings made by nontreating or nonexamining sources made by State agency medical or psychological consultants, or other program physicians or psychologists. 20 C.F.R. § 404.1527(e)(2)(i). However, the ALJ must consider their findings and opinions apart from any determinations of disability, which are reserved for the commissioner. 20 C.F.R. §§ 404.1527(c)(2)(i) and (d)(2). When a treating source's opinion is not given controlling weight, the ALJ must explain what weight was given to the medical opinions. 20 C.F.R. §§ 404.1527(e)(2)(ii). Medical opinions are statements from physicians and psychologists, and may include a claimant's symptoms, diagnosis and prognosis. 20 C.F.R. § 404.1527(a)(2).

The Court does not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). The Court will reverse the Commissioner's findings only if they are not supported by substantial evidence, or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

It is clear from the record that the ALJ properly considered the pre-CPD evidence and the post-CPD evidence, including the report of Dr. Cashen. (R. at 636). Further, the ALJ found that there had been no formal RFC assessment in 1999, the CPD. (R. at 669). Instead, the ALJ found that the evidence in the record that after July 31, 2004, the claimant's RFC is less restrictive than it was at the time of the CPD.

This Court cannot re-weigh the evidence or afford a different weight to Dr. Cashen's findings. The ALJ relied upon substantial evidence in the record, and the fact that the ALJ's opinion did not adopt non-treating physician's report from the evidence does not warrant a remand, as the ALJ was not required to afford Dr. Cashen's report any particular weight. *See* 20 C.F.R. § 404.1502

Alvarado next argues that the ALJ erred in relying on the 2004 report of Dr. Hilger and afforded the findings of Dr. Dalfiume the improper weight. As stated above, the ALJ considers medical records along with the other relevant evidence on record. *See* 20 C.F.R. § 404.1527(b). The ALJ evaluates a medical opinion after considering factors such as the treatment relationship, whether the opinions were supported with sufficient explanations, and whether the physician specializes in the claimant's disability or medical condition. *See* 20 C.F.R. §§ 404.1527(d)(2)(I)-(ii), (d)(3), & (d)(5). The Court must give deferential treatment to the ALJ long as the ALJ

6

"minimally articulated his reasons." Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008). The 7th Circuit considers this deferential treatment "lax," and allows the Court to uphold the ALJ's opinion even if reasonable minds could differ. Id. at 713.

Dr. Hilger conducted an interview with the claimant and issued a consultative report in 2004. Alvarado argues that Dr. Hilger improperly diagnosed him with "malingering," and this diagnosis was the basis for the ALJ's rejection of the plaintiff's testimony, as well as the testimony of his mother, brother, and friend. Additionally, he argues that Dr. Hilger's diagnosis was erroneous because Dr. Hilger did not perform any objective medical tests for malingering, and that this finding was contradictory to the past medical evidence on record. For example, Alvarado points out that all of the State Agency examiners before Dr. Hilger found that the he had a learning disability, Dr. Hilger was only given Dr. Cashen's 1999 report, and Dr. Hilger's report was not enough to prove that Alvarado had medical improvement pursuant to 20 C.F.R. § 404.1594.

Dr. Hilger, who performed a consultative exam, reported that the Plaintiff never received psychiatric treatment and appeared in good health, and even drove himself to the appointment. (R. at 443). Dr. Hilger performed a basic mental status test and determined that Alvarado was malingering with suboptimal and disingenuous effort, and had average intellectual functioning. (R. at 443). Although Alvarado has an objection that Dr. Hilger only had Dr. Cashen's report, Dr. Cashen's report was favorable to the claimant.

The Report and Recommendation properly found that the ALJ sufficiently articulated her reasons for affording Dr. Hilger greater weight. The ALJ made a "well-reasoned determination" based upon the doctor's observations and expertise. *See* Elder, 529 F.3d at 413. The ALJ found

7

that because Dr. Hilger's report was most consistent with the reliable evidence as a whole, his opinion was to be given greater weight.

Next Alvarado argues that the ALJ did not give Dr. Dalfiume's findings the weight they deserved because the ALJ refused to consider any contradictions to her assumptions. Dr. Dalfiume is an examining psychologist who examined the Plaintiff in 2008 and 2012. Based upon a 1990 assessment, Dr. Dalfiume reported that the Plaintiff's Scotopic Sensitivity Syndrome was a basis of the plaintiff's disability.

Again, here the ALJ supported her findings with ample evidence from the record. The ALJ's opinion emphasized that no treating or examining source since that assessment has independently diagnosed the plaintiff with Scotopic Sensitivity Syndrome or indicated that he had work related limitations as a result of his eye problems. Further, the ALJ found that there was no explanation for the drop in IQ scores between the 2008 and 2012 evaluations, and that the latter evaluation included far more diagnoses. (R. at 661-662). The ALJ also stated that between 1999 and 2008, the claimant demonstrated a drastic drop in his WAIS-II scores: verbal IQ dropped 9 points, performance IQ dropped 11 points, and full scale IQ dropped 12 points. The ALJ noted this decrease and also noted the lack of evidence of any medical explanation, even by Dr. Dalfiume, who hypothesized the drop in scores was due to the claimant's tiredness after a recent vacation. Dr. Dalfiume found a possible avoidant personality disorder and generalized anxiety disorder, among other disorders. The doctor also stated that some of the decrease in the Plaintiff's reading and oral language scores were due to the decrease in structure and social stimulation in his life.

The ALJ is not required to afford any particular weight to Dr. Hilger or Dr. Dalfiume because there was no treatment relationship. *See* 20 C.F.R. § 404.1502. Here, the ALJ explained

8

that the 2012 assessment is suspect because it relied upon the statements from Alvarado's family and friend, who have financial incentives. The ALJ also indicated that the Plaintiff's attorney sought this 2012 evaluation to reinstate Social Security benefits, and Dr. Dalfiume was only provided with certain documents to obtain a favorable outcome. The record does show that in 2012, Dr. Dalfiume had access to the pre-CPD documents, as well as the information he received for the 2008 assessment (R. at 492), which includes Dr. Hilger's report, as he discusses it in both the 2008 and 2012 assessments. (R. at 495; 790-91). Although the ALJ's statement about the information available to the doctor is mistaken, there is sufficient evidence to support her credibility findings with respect to Dr. Dalfiume.

While it is true that an ALJ may not simply dismiss a medical opinion because it was solicited by an attorney (*see* Warren v. Colvin, 565 F. App'x 540, 545 (7th Cir. 2014)), the ALJ offered numerous reasons why Dr. Dalfiume's medical opinion was inconsistent with the record as a whole, and that the report was based upon subjective and self-serving statements of Alvarado, Alvarado's mother, and Melody Justus. (R. at 661-666). For instance, the claimant assisted with his mother's business by picking up and delivering flowers, and lived independently while attending college. The Report and Recommendation properly found that the ALJ articulated many reasons for affording Dr. Dalfiume's opinions little weight.

Similarly, Alvarado argues that the ALJ erred in relying upon Dr. Hilger's 2004 report to remove the plaintiff from disability, and that ALJ erred in determining that there was medical improvement. The plaintiff argues that Dr. Hilger did not use any testing but simply relied upon his impressions he received from the plaintiff in the one hour interview. Dr. Hilger diagnosed Alvarado with malingering, but Alvarado argues that the symptoms reported by Dr. Hilger are symptoms of his disability.

9

Alvarado further argues that neither the ALJ nor Dr. Hilger established that the plaintiff had medical improvement in accordance with 20 C.F.R. § 404.1594, and that the review did not meet cessation requirements. The claimant argues that the ALJ erred in finding medical improvement due to his employment at his mother's flower shop and baby-sitting his friend's children. Instead, he argues that all psychological reports from the state agency examiners up until Dr. Hilger found that the plaintiff had a learning disability, whereas the ALJ said that his learning disability had improved. The plaintiff maintains that his associates degree was "completed in a comprehensive Learning Disability Program where tests are read, class notes are taken by other skilled student note takers, carried a lighter than average course load and had tutors." (R. at 425).

The claimant has the burden of producing medical evidence that supports his claim of disability. Einchstadt v. Astrue, 534 F.3 663, 668 (7th Cir. 2008). According to 20 C.F.R. § 404.1594, medical improvement is:

> any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s).

It must be shown whether the medical improvement is related to the claimant's ability to work. Id. The claimant must be able to engage in substantial gainful activity before a finding of no longer disabled. See Johnson v. Apfel, 191 F.3d 770, 773 (7th Cir. 1999), 20 C.F.R. § 404.1594.

At the time of the CPD, the claimant's medically determinable impairment was a learning disability, but the claimant's Scotopic Sensitivity Syndrome was not considered to be an established medically determinable severe impairment by state agency medical consultants. (R. at 635). The ALJ found that the evidence failed to "establish that any other listing would have

been met or medically equaled as of 1999." (R. at 637). The ALJ found that the claimant no longer met the listing so there was medical improvement (R. at 645) and as of July 31, 2004, there had been a decrease in the medical severity of the claimant's impairments. (R. at 648).

The ALJ stated that the claimant is "limited to jobs that do not require complex or detailed job processes, jobs with little in the way of change in the job process from day to day, jobs that do not require interaction with the public, and which can be learned by demonstration, without a requirement of reading, writing, or math calculations to learn or perform the job tasks (although the claimant is capable of reading and writing)." (R. at 649). The ALJ further stated the specific limits that the claimant has, and listed jobs that would be appropriate for the claimant. (R. at 668). Also, the ALJ discussed the fact that the claimant had no past relevant work, and that the claimant's improvement is related to the ability to work because it has increased the claimant's RFC. (R. at 669). The jobs the ALJ found the claimant could perform include housecleaner, auto washer, or kitchen helper.

The record supports findings of mental impairments that would limit the claimant to jobs that are not complex or detailed. The ALJ's findings adequately took the claimant's mental impairments and symptoms together into account by limiting Alvarado to only little interaction with the public, jobs that can be learned by demonstration, and do not require reading, writing, or math calculations to perform. (R. at 649).

The Court again addresses the point that it may only overturn the judgment of the ALJ if it is not supported by substantial evidence or does not follow the proper legal standard. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 401. The Report and Recommendation

11

properly found that the ALJ articulated her reasons for her findings, discussing the claimant's limitations and ability to perform certain jobs in a 39-page opinion. Reasonable minds might accept as adequate the ALJ's assertion that the evidence on record supports "a significant number of jobs in the national economy." (R. at 670). For instance, Alvarado can buy and sell items on eBay, send and receive e-mail, drive, deliver items for his mother's flower shop, use a computer and camera, and assist with baby-sitting. Although Alvarado, his family, and his friend deny he can do these things without assistance, he even stated that he sometimes performs household tasks like taking out the garbage and putting away dishes. Accordingly, given the detailed analysis of the ALJ, when viewing his opinion and the record as a whole, the Court cannot find that his credibility determination or consideration of Alvarado's limitations was patently wrong. The ALJ's finding that there was medical improvement from July 31, 2004, is supported by substantial evidence and does not warrant a remand.

Alvarado's next argument is that the ALJ and Magistrate Judge made false credibility assessments of his family and friends. Plaintiff concedes that his friend, Melody Justus, admitted to having a financial incentive to help the plaintiff obtain Social Security benefits.

The Court is able to overturn an ALJ's credibility determinations only if the determinations were patently wrong. Pepper v. Colvin, 712 F.3d 351, 367 (7th Cir. 2013). A determination is patently wrong "when the ALJ's determination lacks any explanation or support." Elder, 529 F.3d at 413-14. The Court does not "undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, we merely examine whether the ALJ's determination was reasoned and supported." Id. at 413 (7th Cir. 2008). The ALJ must provide specific reasons for the credibility findings. Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002).

It is the province of the ALJ to resolve evidentiary conflicts, which requires consideration of : (1) activities of daily living; (2) location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) treatment for relief of symptoms; (6) measures other than treatment used to relieve pain; and (7) any other factors concerning functional limitations and restrictions. Erhart v. Secretary of Health and Human Services, 969 F.2d 534, 542 (7th Cir. 1992); Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). The existence of an evidentiary dispute is not grounds for reversing the ALJ's decision to credit one version of facts over another. Herr, 912 F.2d at 181 n.4 (7th Cir. 1990). Additionally, it is well-settled that "[a]n ALJ may discount subjective complaints of pain [or limitation] that are inconsistent with the evidence as a whole." Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995).

The Court is required to give deference to the ALJ. The ALJ articulated her reasons for affording the testimony of Alvarado's brother, mother, and friend little credibility. The ALJ stated that their testimony was inconsistent with the record and that these individuals gave self-serving statements. As stated above, the claimant lived independently during his time achieving his college degree, often drove and even made deliveries for his mother's business, and overall the evidence on record established at most a mild restriction of activities of daily living. (R. at 641, 649). Additionally, Alvarado's brother and Ms. Justus discussed how the claimant was a financial burden to them, and the ALJ concluded that this constituted a reason to question the validity of their statements regarding the claimant's activities of daily living. (R. at 665). The

13

ALJ discounted the opinion of Mr. Farr because he lacked the background to make determinations about Alvarado's ability to be employed, and Mr. Farr's statements were given less weight than the inconsistent evidence of Alvarado's actual daily activities. The ALJ did not attack Mr. Farr's credibility beyond his lack of expertise.

Moreover, there was evidence and testimony supporting a fraud between the claimant's mother, Melody Justus, and Ms. Justus' boyfriend, which the ALJ discussed at length. (R. at 652-53). Ms. Justus had falsified a childcare agreement for tax reasons, and the claimant's mother signed Alavarado's name as the caretaker. Ms. Justus claimed that she never paid the claimant to watch her children, instead paying her boyfriend, as she claims she did not trust the claimant to watch the children on his own. The ALJ also stated that the brother's statements were given less weight than Alvarado's actual abilities, stating that "[w]hile the claimant's brother seems to be well meaning, he has not provided any reliable vocational information regarding what the claimant could or could not do in a work setting; more weight is given to the less subjective/self-serving evidence in the file and vocational testimony from a vocational expert." (R. at 657).

The credibility determinations are not "patently wrong" as the ALJ supports each determination with detailed explanations and evidence from the record. Overall the ALJ found the testimony of these individuals inconsistent with evidence in the record as a whole. The Court finds the conclusions of the ALJ and Magistrate Judge are well-reasoned and supported (Elder, 529 F.3d at 413) and no remand is warranted on the basis of the credibility assessments.

Finally, Alvarado argues that the hypothetical posed to the vocational expert ("VE") was improper because it "did not include the conclusion he would need a structured and selected entry level occupation." (Doc. 20, p. 12). Instead, Alvarado insists that when his attorney

included more limitations from the medical evidence in her hypothetical, the VE responded that there were no jobs that met his needs.

The Seventh Circuit maintains that "the ALJ must question the vocational expert regarding every impairment set forth in the claimant's record to the extent that the impairment is supported by the medical evidence." Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003), citing Herron v. Shalala, 19 F.3d 329, 333 (7th Cir.1994). The ALJ, however, is "required only to incorporate into [her] hypotheticals those impairments and limitations that [s]he accept[ed] as credible." Similia v. Astrue, 573 F.3d 503, 521 (7th Cir. 2009).

The transcript reveals the following discussion between the ALJ and the VE:

EXAMINATION OF VOCATIONAL EXPERT BY ADMINISTRATIVE LAW JUDGE

Q: Mr. Regains, I would like you to assume and individual who is, let's see, currently 44 . . . .he graduated high school in special education, has an associate's degree, I guess he also has that with special education, but no exertional limitations. Let's assume no past relevant work for this. An individual who would be limited to jobs that do not require complex or detailed job processes, little in the way of change in the job process from day-to-day, jobs that do not require interaction with the public, and jobs that can be learned by demonstration rather than requiring reading, writing, or math calculations to learn the job or perform the job.

A What was the latter part of that hypothetical or that component, Your Honor?

Q Jobs that can be learned by demonstration and that do not require reading, writing, or math calculations to perform the job tasks. The individual can read and write but slowly, so jobs that basically you just do without having to perform those tasks.

A Okay.

15

Q Can you give me some examples of jobs that would fit that hypothetical?

CLMT Wait, I certainly can't write, I don't know, I mean, I certainly can't write. There's no –

ALJ: I've asked him to give me jobs that don't require writing.

CLMT: Oh, okay, I see.

VE: Okay. At the heavy exertional level, Your Honor, I think one example I could list would be that of a housecleaner. That's the DOT title, which is 323.687-018. That's an SVP: 2 as far as skill level is concerned. It's, as I said, heavy. . . . At a medium exertional level I think one example of what would be an SVP: 1 would be automobile washer, which is 919.687-014. . . . I think also at the medium exertional level the person that you cited or described in the hypothetical could be a kitchen helper, that's 318.697-010. . .

BY ADMINISTRATIVE LAW JUDGE

Q Do you have a light example?

A At a light exertional level the person that you described I believe could do an assembler of small products, which is 706.684-022. . .

Q Any other light?

A Those are some examples. At the light there would be packaging inspector and hand packager for example, 920.687-074.

(Supplemental Transcript at 829 – 831.)

The medical evidence and limitations reasonably supported by the record were considered by the ALJ in formulating the hypothetical question. It was proper for the ALJ to omit from the hypothetical any limitations based on statements by Alvarado or other witnesses which the ALJ fund to be not fully credible, limitations entitled to little weight in light of a lack

16

of medical support in the record as a whole, or the unsupported arguments of her attorney. Erhart, 969 F.2d at 540 (7th Cir. 1992). The law states that "[a]ll that is required is that the hypothetical question be supported by the medical evidence in the record" and that it "build[s] an accurate and logical bridge between the evidence and his conclusion." Meredith v. Bowen, 833 F.2d 650, 654 (7th Cir. 1987); Cass v. Shalala, 8 F.3d 552, 555-56 (7th Cir. 1993); Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ's opinion meets this standard because the ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible. Similia v. Astrue, 573 F.3d 521. The hypotheticals posed to the VE reflected those limitations the ALJ found credible and supported by the medical evidence on record. To reflect the degree of limitation supported by the record, the ALJ included a limited range of light work, including unskilled work at all exertional levels caused by his limitations, such as jobs that do not require complex or detailed job processes, jobs that can be learned by demonstration rather than requiring reading, writing, or math calculations to learn the job or perform the job, and no interaction with the public. This limitation resulted in a significant number of jobs in the national economy that Alvarado could perform. The Court cannot find that the ALJ's credibility determinations, weight afforded to medical evidence, or hypothetical was patently wrong, and therefore these determinations are entitled to deference under Diaz v. Chater, 55 F.3d 300, 308 (7th Cir 1995).

## Conclusion

When viewing the ALJ's opinion and the record as a whole, the Court cannot find that her credibility determination or consideration of Alvarado's learning disability was patently wrong. Furthermore, the ALJ opinion contains "such relevant evidence as a reasonable mind

17

might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).

With this additional explanation and detailed findings, the Objection of the Claimant [20] is OVERRULED, and the Report and Recommendation [19] of the Magistrate Judge is ADOPTED. Claimant's Motion for Summary Judgment [12] is DENIED, and the Commissioner's Motion for Summary Affirmance [16] is GRANTED. This matter is now TERMINATED.

ENTERED this 7th day of July, 2015.

                                                s/ James E. Shadid
                                                James E. Shadid
                                                Chief United States District Judge